The United States v. Bellinger Number 06-5040, and Mr. Nelson and Ms. Markovitz. Thank you. May it please the Court, my name is Lathrop Nelson, and sitting with me at council table is my colleague Ellen Brotman. Together we represent Appellant Edward Bellinger. I'd like to reserve three minutes. That's fine. This is an appeal of a conviction for a felon in possession of a firearm that raises two issues before the Court, a suppression of the firearm issue and insufficiency of the evidence. With the Court's permission, I'd like to – I think – let's focus on the first issue, the suppression issue. I think if we get to the second issue, insufficiency of evidence is normally a very difficult hill to climb. So why don't you concentrate on the first issue? I'll concentrate on the first, Your Honor. The findings of fact of the district court established that the police had no reasonable suspicion to pull over the automobile. The question here is there were two reasons that the police officer testified at the hearing, that he had heard a flash report about this particular type of car and that the car had tinted windows and he believed that tinted windows were a violation of Pennsylvania law. Is that correct? That's what he testified to, Your Honor, yes. And the judge said, Judge Brody, that she believed that the principal reason was the flash report and she really didn't seem to make a finding at all with respect to whether – she never said that he was wrong or she disbelieved him with respect to the tinted windows, did she? That's actually not correct, Your Honor. What did she say he was wrong? The Honor specifically says that the officers pulled the burgundy car over because Officer Green believed it fit the flash description. Then the next sentence she continued to say they did not pull over the car because the tinted windows are illegal in Pennsylvania. That's on page 152 of the appendix. But even if that is so, how do you surmount the Supreme Court cases of Devantech and Wren which say the subjective intention of the officers is of no account? If they objectively have probable cause to stop the car or a good cause to stop the car, that's sufficient, even though subjectively they're stopping it for another reason. That's Supreme Court precedent right on point. Also, and you add to that our case that we had just recently in the opinion of Dolphin Colina. Your Honor, with regard to the specific intent language of Wren and Devantech, what those cases are talking about, if you look at the facts of both of those cases, there are two reasons why the car was pulled over or the stop was made. The first reason is a legitimate reason. In Wren, it's a U-turn that the officers observed. They see the traffic violation and they have that reason. Then they also have a re- Was it a U-turn or staying too long at a stoplight? The Wren was a U-turn. It was both a U-turn and the car then speeded off in Wren. And in that case, the court said we're not going to look at the subjective intent, the motivations of the officer. They may have pulled the car over because they had a suspicion of drug activity, which didn't rise to the level of reasonable suspicion or probable cause. But at the same time, they had a legitimate reason. They had a legitimate reason that they observed a traffic violation. One question. In the record, wasn't there sufficient evidence before the district court to prove that there was objectively a reasonable suspicion to stop the car? Was there in the record? This counts as any subjective thought. If I understand your question correctly, Your Honor, in the record there's no basis in the findings of the district court. There's no basis. There's no belief. There's no belief that a traffic violation had occurred. There is evidence in the record that the windows were tinted, if that's the answer. But the officer testified that the windows were tinted, and that was one of the reasons. Now, I thought the court didn't make a finding on that. We'll come back to that. But why don't you answer Judge Cowan's question first. If I understand your question, there was evidence in the record that the windows were tinted, but the district court determined that that was not the reason. And this court's decision, as Judge Ambrose had raised, in Delphin-Kalina, requires that there be a belief that there's a traffic violation ordinance. There's a two-part test. No, I thought Delphin-Kalina's, yeah, because that was the case where the item dangling from the rearview mirror, the police officer thought that anything dangling from the mirror was a violation of laws. It turns out it had to be something dangling from the mirror that, in fact, impeded your vision. So he was wrong, and yet the court still found that the conviction was to be affirmed, or the evidence was not to be suppressed. That's correct, but in doing so, the court articulated a two-pronged test. First, the police officer must identify the statute or ordinance that he believed to have been violated and then provide specific articulable facts that support an objective determination of whether any officer can possess it. And didn't the officer do that here? He believed, or he said, he testified at the hearing that he believed that tinted windows were a violation of PA law, and as it turns out, he's right. He testified to that, Your Honor, you're correct, but the judge specifically rejected that language. And what she said was, I think that the reason he stopped was because of the flash report. That's where I want to come back to my initial question. Where in Judge Brody's opinion does she say, I am making an adverse credibility determination with regard to your statement to me that the police officer stopped a car for tinted windows? Judge Brody says, and just give me the page. Certainly. It's from A-151, Your Honor. Officer Green testified that he now knew that tinted windows were illegal. He testifies at the suppression hearing for two reasons, but she rejects that she doesn't find that testimony credible. Well, keep going. He testified that he pulled the burgundy vehicle over because of the combined reason of the tinted windows and the flash description. Officer Green did not describe the tinted windows in either the incident report he wrote about the incident nor the investigation report he assisted the detective in preparing. They did not pull the car over because of the tinted windows are illegal in Pennsylvania. The officers pulled it over. So she's saying that they pulled it over because of the flash report. Only because of the flash report. Yes, Your Honor. So we have a situation. This is a Terry case. We have a situation like in Terry where the officer believes a crime has been committed and the court didn't address, but the government does not dispute, that the flash reports are not a reasonable basis to pull the car over. We only have one reason in this case. That's the flash reports, and they're insufficient. With regard to the subjective intent language, the subjective intent language flows from Terry, and in Terry the court says we're not going to look at subjective intent. The simple good faith on the part of an arresting officer is not enough. Wren makes it pretty clear. Subjective motivation is irrelevant. Either good faith in Terry or bad faith in Wren. That's correct. But you need to have a reason. And in Terry they actually. Your argument seems to focus on the subjective. We're saying what about objective, and I think we all agree that that's the standard. Subjective intent, the court in talking about subjective intent is talking about motivation. Talking about if you, but you still need to have a belief that a crime has been, that there's been a violation. What the courts talk about is so long as you have that belief, we're not going to get into any sort of bad motivations. Like in Wren, we're not going to get into any sort of bad motivations or incorrect motivations. But you still, and this court's opinion in Delfin-Kalina suggests, you still need to have a belief. You need to have believed that a crime has been committed. Not that you believe now or the district court believes. The record reflects that one of the reasons that objectively the police officers could have stopped it for the tinted windows. You can't get away from that objectively, correct? But at the. Could they have stopped it for the tinted windows? They could have stopped it for the tinted windows. She found that they didn't stop it for that reason. They stopped it for a different reason, which was inappropriate. But how do you get over Wren, which says if you have a subjective intent, which is improper, but objectively, even though you don't operate under that, it would have been proper, that it's a proper stop. Your Honor, Wren, we believe Wren stands for the position that as long as you have a viable basis for the stop, you believed that there was a viable basis for the stop. We're not going to get into any other motivations you have. You can't have a bad motive will not vitiate an otherwise reasonable stop. I see your time is running. I'm wondering if the presiding judge could get into the second. I think a very strong argument you can make here is on the possession, which I find to be intriguing. The man is sitting next to a gun sticking out of a seat that he's seated in. He's a convicted felon. Why isn't he in control possession? Why is he exercising dominion and control over that firearm? There's nothing in the record to suggest that he is exercising dominion and control of the firearm. The gun is sitting next to him in the chair or tucked in the chair next to him, correct? Yes, you are correct. It's tucked in the side. It's jammed in the side. There's only a small portion that is sticking out. So he's sitting a few inches from it. Yes. And sitting directly behind him is another individual who we know has a propensity to hold firearms because he himself is holding a firearm. Well, you're telling this court that if someone is sitting with a gun in a chair, which is a few inches from his side, that he doesn't exercise dominion and control over that revolver? Yes, Your Honor. Proximity is not enough. And in Jenkins, the court determined that proximity is not enough. In Jenkins, there was an individual sitting on the couch with drug paraphernalia and guns right in front of him. I know Jenkins well. I dissented, and it was a brilliant dissent, and I've got to tell you this. After that case, there was a petition for rehearing, and not one judge on this court voted for rehearing based on that dissent. I would have been fired on the court. Well, it came too late to this court, and maybe I would have had one judge. I'm kidding. We'll play with it. And the difference in— In Jenkins, when the man is sitting on a pile of cocaine, virtually, within a hand's reach of him, and this court held he's not in possession and control of that heroin or cocaine. And that's correct, Your Honor. In this case, the gun is not obvious. The officer did not even see the gun until he was down on his knees holding Mr. Bellinger on the ground. The gun is not in an obvious position. There's no basis that there's knowledge. I see my time has expired. You can finish answering that question. There's no— Well, there is some indication here. They took 15 seconds or whatever it is to roll down the window. He was jostling around in his seat. Isn't that sufficient to cast a jury question as to whether or not he had dominion and control of this firearm? Your Honor, there's no basis that Mr. Bellinger had any control over the fact that the window took 15 seconds to roll down. In addition, the rustling and the police officers couldn't identify who was rustling around. In fact, Mr. Gailiard, who's sitting in the back seat, the driver testified saying that he was the one turning around, saying that the jump out, the jump out is behind us, referring to the undercover police car. And the police officers couldn't identify any movements made by Mr. Bellinger in the direction of the firearm or that would suggest any way at all that he had any possession or intent to exercise dominion and control over that firearm. Unlike Jenkins, this case, the man is within an inch or two inches of the firearm tucked into the seat that he's sitting on. Your Honor, it is tucked in the seat they're sitting on. There's no evidence in the record. The district court said in its opinion that the gun was in an angle difficult for others to reach. There is no evidence in the record on that basis. What we do know is that Mr. Gailiard was in the back seat. He has a gun. He has a propensity to have a gun. And he could have just as easily put the gun on the side of the seat in order to get rid of the firearm. Well, the jury found to the contrary. The jury found your client had the gun. Yes, the jury did, but there were no, in the evidence that was presented, there was nothing. There was no plus factors. In constructive possession cases, we need to make sure, because we have no evidence of actual possession, we need to make sure that the individual has exercised some sort of activity to suggest that he has possession over the, that he knows the firearm is there and an intent to exercise dominion and control. Well, your adversary points out in her brief that your client was lent this car. The owner said there was no car, no gun in the car when it was lent. He's the one who sort of controlled the whole conversation. Of course, the gun was near your client. The gentleman in the back had his own gun with a different type of ammunition. How do you deal with those factors? I mean, doesn't this whole, the totality of all these circumstances support the jury's verdict? With regard to the fact that there were two guns in the car, there is no basis for the assumption that if there are two men in the car and two guns in the car, that they have to be, each has to have a gun. In fact, Well, one was in the waistband of the guy in the back. The other one was close to your client. And there's no evidence whatsoever that Mr. Gilear could not have put the gun in the side of the front seat and trying to get rid of his second gun. And with regard to the ownership of the car, he didn't own the car. He rented the car, didn't even have exclusive control of the car for the four hours. The cases that talk about ownership as a plus factor, as an additional factor for the court to consider in addition to proximity for constructive possession cases, look to operation and ownership of the car as a way to make an inference, that if you can exercise dominion and control over something that you own or have de facto control over, then you have de facto control over the items in that car. That is a factor that doesn't play into consideration in this case because it's a rental car situation where he didn't have exclusive dominion or control over that car. Thank you very much. Thank you, Your Honor. I'll get you back in rebuttal. Ms. Markovitz. Thank you, Your Honor. Sure. May it please the court, Vicki Markovitz for the government. I'll start addressing issue number one. Why don't you address the Jenkins issue first. How do you get over Jenkins where the man was sitting on a pile of cocaine and the court said he had no dominion or control and this man is sitting next to a gun? Yes, Your Honor. What's the difference? As a matter of fact, Jenkins seems like a stronger case. Well, I think the government would have agreed with you in your dissent on Jenkins. Not one judge on the court agreed. But Jenkins… You noticed he mentioned that before? I did. I did. Turns out he may be right, but who knows. But in Jenkins, that's all you have. Here we have so much more than him just being next to the gun. The defendant is trying to swing this that all we have is proximity and all we have is him near the gun. First of all, we're all looking at a cold record. The jury, it's a sufficiency of the evidence, as you've already mentioned. I mean, the jury got to judge the demeanor and the credibility of the witnesses. They got to see the police officer demonstrate, get down before them and demonstrate exactly what next to meant. He showed them where the gun was, showed them that Mr. Gelliard behind. It would have been impossible. He would have really been awkward for him to reach around and put the gun in that particular location. In addition, we also know that Mr. Gelliard was only in the back seat, according to the testimony. He was never in the front seat. He was never in that area of where Mr. Bellinger had dominion and control over. What did Bellinger do to demonstrate intention and knowledge to exercise dominion and control? It's he that you have to concentrate on. Yes, Your Honor, and if you concentrate on him, concentrate on his – even though he didn't outright own the car, he had control over the car. He had the only set of the keys were given. The person who had owned the car – a couple of people testified that they had never had the gun. There was a continuous testimony of what happened from the time Mr. Bellinger picked up the car until the time – He says it's not his gun too. Everyone says it's not my gun. As did the backseat passenger say it is not his gun. However, in that case, there was the suspicious activity, there was the evasiveness, there was the fact that he was answering all the questions. What was the evasiveness showing his dominion and control over the firearm? I mean, first of all, there were the movements in the car, and yes, there were tinted windows so we can't tell who, but it was more than one person moving. So the officers already approached with the suspicious activity. In addition, it took them all 15 seconds to roll down the window, and the officers thought this was an unusually longer period of time than it should have been. In addition, the officer was addressing the driver, and Mr. Bellinger kept jumping in and he kept looking for papers. In addition, Mr. Bellinger had control, and under the sufficiency of the evidence, you would have to find that this was all unreasonable, but he had control of the only keys, and when Ms. Pearson picked him and the backseat passenger back up, he told her where she was going to go with that car. So in addition to being the one who was in control or temporary ownership of the car, he was also controlling where that car went, who that car was lent to, and based on the case laws, that was dominion and control over the car. What case law are you talking about? I'm not acquainted with no case law that if someone borrows a car and he has other passengers in it and gives one of the passengers the key to drive it, that he has dominion and control over the car to the same extent as you would have of an owner if you were found driving the car and a firearm was in that car. There's no such case. And I would agree in that. I was referring to, and I'm going to mispronounce it, the United States v. Illa Filisi, which was a 1992 Third Circuit case before you, and here the item was in the trunk and the driver was held responsible. The driver in that car owned the car. He did own the car. This man did not own the car. He did not own the car. However, the owner had already testified that she didn't have a gun in that car. She'd lent the only keys. She'd recently cleaned the car, respectfully, Your Honor. And therefore, maybe not legal ownership, but he did have dominion. And conjunctive possession doesn't require ownership. It requires dominion and control over the car. And so specifically, Mr. Bellinger had control over the car in this case. And under the sufficiency of the evidence standard, I mean, you would have to find that the 12 people sitting in that jury who were able to judge the record were unreasonable in their finding when they look at the whole totality of the circumstances in this case for why Mr. Bellinger had dominion and control over the gun in this case. Going to the first question, on the first issue. In Delphine Colina, the court wrote that, and I'm going to quote, taken together, Terry and Wren stand for the proposition, Terry being the Terry stop and then the Supreme Court case and Wren, stand for the proposition that a traffic stop will be deemed a reasonable seizure when an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop. In other words, an officer need not be factually accurate in her belief that a traffic law had been violated, but instead need only produce facts establishing that she reasonably believed that a violation had taken place. I'll go on to another quote in a moment. If the judge here specifically discounted any belief that the stop was as a result of tinted windows, and she said that the stop was as a result of the flash report, the stop was not a result of tinted windows, which in effect is inferentially saying she disbelieved, don't we run into the problem that this particular police officer must reasonably believe that a violation had taken place? I would argue that the police officer doesn't have to believe that the violation took place subjectively. It's a reasonable standard and objective. Would a reasonable officer objectively look at these circumstances, see a tinted window, know it was a violation of a motor vehicle code? That's certainly one interpretation, but again, let me read back to you what Judge Pollack wrote. But instead need only produce facts establishing that she reasonably believed that a violation had taken place. In other words, even if she got some facts wrong, if she reasonably believed that there were tinted windows at that time, and when you look at what Judge Brody says on page 151, the quote that Mr. Nelson made, this is Judge Brody, Officer Green testified that he now knew that the tinted windows were illegal in Pennsylvania. And going on to the next page again, the officers pulled the burgundy car over because of the flash description. They did not pull the car over because of tinted windows. So what she's saying is, okay, he knows it now at the hearing. He didn't know it then. And Judge Pollack is saying, or the panel is saying, this court is saying, in Dolphin Kalina, that the officer had to reasonably believe that a violation had taken place at the time. Judge Brody is saying this Officer Green did not believe, reasonably or otherwise, that a violation had taken place at the time of the stop. In effect, he's making it up now. He's saying that he believed now because he knows it now, but he didn't believe it then. Yes. Respectfully, Your Honor, in Dolphin Kalina, what was in, subjectively, what was in that officer's mind at that particular time was that this object was obstructing the view, and that that was a violation of the Motor Vehicle Code. And as the case found, the mistake of law did not matter as long as a reasonable officer could have considered it. Here, this is a mistake of fact. Yes, yes. And, well, in this case. In fact, Judge, or Officer Green, according to Judge Brody, did not stop the car because of the tinted windows. In this particular case, the difference is this is actually better because there's no, he's not mistakenly pulling over the officer for a law that doesn't exist. He testifies, and I would say that this one, the defendant is basing their whole argument on this page 151 to 152. But if he, even afterwards, if he was going back and sort of filling in the gaps, don't you think his report would have covered himself? Don't you think that either the investigation report or the other report that he filed would have mentioned the tinted windows? No mention at all. Yes, Your Honor. And the judge's comment. But Philadelphia police reports are real, are small. Even the 48, which they talk a lot of time at, is like the size of a traffic ticket. And in the report, it actually says just met flash information. It didn't have any of the details, even of the vehicle. In police officer school, this is like 101. You've got to put down why you stopped. Right. And he could have put it, he could have, you know, even little squiggly tinted windows. Right. It didn't even mention the color. But that's why it's important to view it from an objective standard, not a subjective standard, because then we would be viewing things, we'd be evaluating a Fourth Amendment analysis, not even handily for law enforcement. And in this case, Judge Brody didn't find him incredible and didn't find that he may have not also known that these were illegal. To get to your objective standards, you have to have certain prerequisites. In here, it's very. The police officer had to have believed that he was stopping for some reason other than the flash report. And, you know, something, some sort of violation. And he did. I mean, I don't think the Devin fact requires the officer to subjectively know that why, what the statute is, as long as a reasonable officer looking at this car would know that. However, the record's clear. The officer mentions on page 56, he mentions that he stops the car for both reasons. And the judge never finds him incredible. The judge finds his motivation for the stop. The judge says on page A152, the officers pulled the burgundy car over because Officer Green believed it fit the flash description. They did not pull the car over because the tinted windows are illegal. And the government agrees with that, but she's saying the motivation for the pullover was the flash. But she's not saying that he didn't know that it was illegal. She's not saying that they didn't know the windows were tinted. I mean, there's like eight or nine mentions of the windows. I mean, what Wren says is that if you have, your motivation is irrelevant, and you've said that. Right. But you still have to have a foundation for how you get to the mistake of law, if there was one. And she's saying there is no foundation. This officer, in effect what she's saying is the officer is now making it up at the hearing. He didn't tell the person when he stopped the car, I'm stopping you for tinted windows. Didn't put it in the investigation report. Did not put it in the other report. Then he finds out after he talks to the attorney and gets to the hearing, like, uh-oh. Can't stop a car necessarily from a flash report. Better come up with something. Respectfully, the government argued that that was not bared out in the transcript. We would agree that the judge found the motivation was the flash. However, in her opinion, and that quote was from the bench right after the motion to suppress, after she'd taken her at recess. In her opinion, on page 13 of the record, she states that Green testified that he knew tinted windows are illegal in Pennsylvania. However, I find that he pulled over the vehicle because he believed it fit the flash description, not because of the tinted windows. What she does not say is that he made this up now. He's not cross-examined. Let's go to the opinion and just point out where to look. 13 of the record. And where on page 2 of the opinion, you mean? Yeah. A13? It's on appendix 13. I'm looking at page 2 of the opinion, A13. Upon seeing the burgundy Oldsmobile, Green pulled over the vehicle. Green testified that he knew tinted windows were illegal in Pennsylvania. However, I found that he pulled over the vehicle because it fit the flash description, not because tinted windows are illegal in Pennsylvania. Now, perhaps that's leaving a gap that we need to find out from the court. In fact, did she truly disbelieve him or not? The government would argue that if she disbelieved him, she would have found him incredible, and we wouldn't be standing here before you today. She did not find him incredible. She, again, also got to judge his demeanor and what he had to say from the record. What she said was that objectively, an objective officer, forgetting this officer, could have found that tinted windows were illegal in Pennsylvania and could have stopped the car. Yes. And under Devenpak, it doesn't matter. All that matters is that they knew the facts ahead of time, that the windows were tinted, and I don't think there's any disagreement. Even more than that, under Devenpak and Wren, aren't those decisions to the effect that regardless of what the officer thought, if there is in the record evidence from which he could have legitimately stopped the car, that that's the end of the inquiry, even though subjectively he didn't operate on that knowledge. And if I could follow up on that, I found a case that's not cited anywhere, USP Hawkins, 811 F. Second, 210, where actually the court said, although there were no, this court of course, although there was no evidence to support a stop for the reasons given by the officers, traffic violations, the events the officers observed during the surveillance constituted reasonable suspicion. So I guess the question is, not to steal the question, but can we post hoc say, well, here was a reason, and so it's all okay. I don't think that we can say post hoc, oh, my goodness, I just realized the windows are tinted. That's not what we said. Well, we know the circumstances. We all can read the record, and I think they're pretty much undisputed. I mean, it's agreed, it's undisputed that the officers knew these windows were tinted. Right. And I think the case doesn't require the officer to know that they're legal. In this case, he did know they were illegal, and it wasn't post hoc. So I think you have one step further. But the government argues that you did not need to, the government argues that you did not even need to know that they were legal, but this officer did. And I don't think that's contradicted in the record anywhere, even though the defendant has argued based on that one word now that the whole record is not paid attention to. Well, there is, in your look at the transcript, it looks as if she disbelieved him. When you look at the opinion on A2, it looks as if she said he testified that he pulled the car over for tinted windows. However, I find that he pulled the car over because of the flash description, not because of the tinted windows. She didn't go and make the next statement, I find him unbelievable. It's, in effect, a determination not made in the opinion, which it may be the best that one could argue for that, you might say, is that we'd have to remand to find out whether she disbelieved him. In other words, let's say she comes out specifically and says, I think you are lying. I am making an adverse credibility determination with regard to your statement that at that time you believed that it had tinted windows and was a violation of PA law. Where does that leave us? That would leave us not before you, because if she had found the officer incredible, then we wouldn't have used the officer later in trial, or we probably wouldn't have even gotten that far. Well, with respect to this particular issue. And with this particular issue, I don't think the opinion, I think the opinion is clear that she didn't make this finding because she found him credible. Well, that's not answering Judge Ambrose's question. He's saying, what if she did make the finding? Does it matter? Well, I mean, it shouldn't matter under Delfino Colina because they knew the windows were tinted, and it wasn't a post-hack. They didn't discover it after they had already stopped the hack. So the answer to Judge Ambrose is that it would make no difference even if she didn't believe him that he knew the tinted windows were illegal as long as the record reflects the vehicle at the time of the stop had tinted windows which under Pennsylvania law were illegal. Yes. But when I read to you the pertinent provisions of Delfin Colina, it's nuanced. The officer has to, that officer has to reasonably know at the time. You can make a mistake of law, but if this officer reasonably knew at the time, why don't you write it down? Well, a reasonable officer would have known, and this was a five-year-old. No, no. This reason, this officer, here's the nuance. Not a reasonable officer would have known. This officer must reasonably believe. Then it would be judging it from a subjective thing, and I understand Delfino Colina. No, this officer must reasonably believe from an objective standpoint that there was a violation of law. But you need that as a foundation before you get to the next part. But in this case, he believed in a law that didn't exist, so it's a different fact pattern than this case, and the cases that have followed don't say that you need to know what the law is. That would require all officers to know the whole Crimes Code back and forth, and it wouldn't allow for an even-handed analysis of the Fourth Amendment because it's based on the reasonable officer. You're right as to the law, but as a matter of fact, must not this officer reasonably believe at the time of the stop that there was a violation of law? As a matter of fact, must not this officer reasonably believe at the time of the stop that there was a violation of PA law? No, not the officer in this case. Well, then how do you explain the statement, the prosecution must produce facts establishing that she reasonably believed that a violation had taken place? The nuance the government would argue in this case is that what was in that officer's subjective head was the wrong law. It didn't exist. And so they based the whole stop on something that a reasonable officer wouldn't have known. But here it's fact, not law. He's right on the law, looking back. And if she believed him at the time, he was clearly right on the law. There is no doubt about it, as they say, that he could have stopped that car for tinted windows. But he didn't. He didn't tell the person. He didn't put it in the report. Putting it in the report. And so you're saying if, hypothetically, somebody could have stopped that car for tinted windows, it's OK? Based on Devon Peck, yes. Based on Devon? Devon Peck v. Alford. So what does the Supreme Court say in Devon Peck that helps you? It says that it doesn't matter what you end up finding or what you end up charging them with. It just matters. It matters that the facts you know at that time. Here they stopped him because they thought he was impersonating an officer, and they ended up charging a violation of the Privacy Act, the subjective intent of the police officer, because even if the police officer never contemplated a violation of the traffic law. Devon Peck says, Those are lawfully arrested whom the facts known to the arresting officer give probable cause to arrest. We don't know if he knew at that time. They could have gone back and looked at the cars. After they were told that the flash report didn't work, they could have gone back and looked at the car and gone, Uh-oh, OK, what else can we come up with here? But respectfully, the facts they did know at the time, they did know that the car had tinted windows. He testified, but we don't know that the judge believed him. In fact, there's some indication she didn't believe him. The judge stated that that wasn't his motivation for stopping him, but did not say that he was incredible. The judge said that they stopped the car because of the flash report. They did not stop the car because of the tinted windows. And the flash report contained the tinted windows, so even though the flash isn't the basis of the stop, the flash is the basis for why we know the officer knew that the windows were tinted at the time of the stop, and this wasn't a post-hoc, this wasn't something that was happening. Actually, specifically, what did the flash report say? The flash report, he testified, it had to do with the model, the color, and the tinted windows, and it was over and over again. It was at least nine times between the time he said that this car had tinted windows, combined with what they also said about the flash report. Over and over and over and over again, the officer said tinted windows when he said the flash. And then when he said on page 71, he stopped the car for both reasons, and then the judge found the motivation was the second reason. Thank you very much. Commissioner Nelson, you have three minutes. As you're approaching, let's pick up where we left off. If he shouldn't have stopped the car because of the flash report, but the flash report says, among other things, that this car has tinted windows, therefore, the officer had to have known at the time he stopped the car, the car had tinted windows, didn't he? Yes, but, Your Honor, as I think Your Honor has indicated, he must know that there's a violation of the law. Terry requires it. Terry requires that the officer has a reasonable suspicion. Delfin Kalina requires that the officer believe. But isn't the best you can get from all of that is possibly a remand if you believe that the judge needs to make a finding at that point? Your Honor, I believe that the finding is there. The finding is there both because she says the reason why they stopped the car is because of the flash report, they did not stop the car because of the tinted windows, and then the earlier statement that says he believes now. But how do you get over, you know, Devin Peck is very clear that all they have to have in the record is that there could have been a legitimate stop, even though it's not the reason the officer stopped the vehicle. And the report, it doesn't have to be in the police report, the flash report, as long as the record before the district court reflects, he could have stopped it even though it's not the reason he stopped it, even though it's not something he knew at the time was a violation of law. And that's Supreme Court law. You might not agree with it, I might not agree with it. But the record here shows that if he knew about it and if he wanted to, he could have stopped it for a legitimate reason. How do you surmount that obstacle? Devin Peck, if you look at the facts of Devin Peck, Your Honor, there is reasonable suspicion to pull over that car because he was impersonating an officer. It's clear from the face of the opinion that there's reasonable suspicion. What happens is they charge him for this tape recording, for tape recording a stop. There was no probable cause for that. But there was probable cause all over the place for pulling the car over because of the impersonating the officer. It's a situation exactly like Wren in which you have two reasons in the officer's head at the time. We're not going to get into whether the motivations of the officer. You read those cases as requiring that the two reasons be in the officer's head at the time he makes a stop. I read them as saying it doesn't have to be in the officer's head. If the record before the district court reflects he could have used that reason but didn't, but it was a legitimate reason, that's the way I read those cases. Not that at the time he stopped he had two reasons and picked the wrong reason. Your Honor, the facts known to the officer must require that he knew that the violation occurred. Terry requires it. Delfin Kalina requires it. Not Terry. I'm talking about Wren and Devita. You're reading those decisions as requiring that at the time of the stop, the officer had two alternatives and picked the wrong one. I will read them again. But as I recall, it's pretty clear that even though he didn't have the second reason, the legitimate reason to stop, if the record before the district court reflects he could have stopped for that reason, even though he didn't know it or didn't exercise it, that it's a bona fide stop under the Fourth Amendment. You don't read it that way. I don't read it that way, Your Honor. In Devin Peck, there was a reasonable suspicion. There was a belief at the time that this man was impersonating a police officer, and the court said that's sufficient. We don't need to get into the motivations as to which one is the actual motivation. If we agree with you on the second issue, namely possession and control, we really don't have to resolve this legitimacy of the stop, do we? That's correct. On the possession and control, and as we've argued and as in our brief, there is no basis to suggest that he had any knowledge of the gun, let alone an intent to exercise community control. And if you find in that favor and we respectfully request that you do, the conviction should be reversed. Thank you very much. Is this your pro bono? Is that correct? Yes, Your Honor. We're here under the criminal justice act. Well, as Judge Becker used to say, as they say in South Philly, you've done good. We appreciate very much your appearing, and we thank both counsel for very well presented arguments. Thank you, Your Honor.